# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

**Civil Action No.**

RENT-RITE SUPERKEGS WEST LTD, as Chapter 11 Debtor-in-Possession for the Estate of Rent-Rite SuperKegs West;
YOSEMITE MANAGEMENT, LLC, a Colorado limited liability company; and
THOMAS S. WRIGHT

       Plaintiffs

v.

WORLD BUSINESS LENDERS, LLC,

       Defendant

## VERIFIED COMPLAINT AND JURY DEMAND

Rent-Rite SuperKegs West Ltd., as Chapter 11 Debtor-in-Possession for the estate of Rent-Rite SuperKegs West Ltd ("Rent-Rite"), Yosemite Management, LLC, ("Yosemite Management"), and Thomas S. Wright ("Wright') (collectively, "Plaintiffs') by and through undersigned counsel, and for their Verified Complaint, states as follows:

### PARTIES

1. Plaintiff Rent-Rite SuperKegs West Ltd. is a Colorado limited liability company with its principal place of business in Aurora, Colorado. Rent-Rite is currently the debtor-in-possession in bankruptcy case number 17-21236-TBM, pending before the United States Bankruptcy Court for the District of Colorado. Rent-Rite is also a plaintiff in an Adversary Proceeding in front of the Bankruptcy Court for the District of Colorado, titled *Rent-Rite SuperKegs West Ltd. v. World Business Lenders, LLC*, case number 18-01099-TBM, which case

is on appeal in the United States District Court for the District of Colorado, case number 19-CV-1552-RBJ.

2. Plaintiff Yosemite Management is a Colorado limited liability company with its principal place of business in Aurora, Colorado. Plaintiff Yosemite Management, LLC is the predecessor-in-interest to the real property now owned by Rent-Rite, is a guarantor on the loan documents at issue in this case, and has been injured as a result of the fraudulent conveyances set forth herein.

3. Plaintiff Wright is a resident of the State of Colorado and is the 100% owner/member of both Rent-Rite and Yosemite Management. Wright has also been injured as a result of the fraudulent conveyances as set forth herein.

4. Defendant World Business Lenders, LLC is a New York limited liability company with a principal place of business as 101 Hudson St., 33rd Fl., Jersey City, NJ 07302.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1334. There is complete diversity of citizenship between Plaintiffs and defendant and the amount in controversy exceeds $75,000.

6. Venue lies in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**GENERAL ALLEGATIONS**

7. This case is about how two small Colorado businesses were victimized by a "rent-a-bank" scheme used by WBL to perpetrate fraudulent conveyances and charge criminally usurious interest rates.

8. Rent-Rite is a Colorado company is engaged in the business of renting or leasing party equipment.

9. According to its website, WBL is a direct lender specializing in providing real-estate secured business loans and access to capital to support the growth and development of under-served small-to-medium sized businesses that lack access to traditional funding.

10. In 2015, Wright was attempting to improve the credit and financial condition of his business. At the time, he retained the services of Darrell Hornbacher ("Hornbacher"), the founder and president of the Midas Financial Company ("Midas"). Midas is a financial services company with an emphasis on business and personal credit and assists companies in obtaining capital outside of conventional bank and SBA financing.

11. Hornbacher introduced Wright to John Beebe ("Beebe"), who, upon information and belief, was also engaged in providing financial services. One of Beebe's clients was a company called CMS Maintenance Facilities, Inc. ("CMS Facilities"), which is owned by Craig Heber ("Heber"). CMS Facilities is a commercial janitorial cleaning service located in Colorado.

12. In or around January 2016, Beebe informed Wright that he had a "solution" to assist both Wright and Heber with improving their respective businesses' credit and cash flow. Specifically, Beebe informed Wright that if he would consider putting up certain commercial property as collateral to a loan obtained by CMS Facilities, Wright's company would receive funds from CMS Facilities from the loan for purposes of paying off debt and increase the cashflow for Wright's business and rebuild its credit. According to Beebe, CMS Facilities would be responsible for all payments under the loan.

13. Hornbacher and Beebe represented that commercial property was needed and that the loan was a "quick pay out loan."

14. The agreement was for a short-term loan in the amount of $550,000, with CMS Facilities as borrower and Yosemite Management as guarantor. The property to be used as collateral is located in at 1400 Yosemite St., Denver, Colorado, 80220 (the "Property"), and was owned at the time by Yosemite Management.

15. In April 2016, the Property was worth $3.3 million, and was owned free and clear of all liens.

16. On or around April 19, 2016, the Business and Promissory Note and Security Agreement that was executed in the principal amount of $550,000.00 ("Note"). The Note was between CMS Facilities Maintenance, Inc. as Borrower and the Bank of Lake Mills as Lender (the "CMS Loan"). Even though the CMS Loan was not assigned to WBL until June of 2016, contemporaneous email between the parties involved WBL. Thus it was clear to the parties to the note that WBL was always intended to be the lender.

17. Bank of Lake Mills is an FDIC insured, Wisconsin state-chartered bank. WBL is not a national or state-chartered bank.

18. The terms of the Note are as follows: (i) repayment of the principal amount of $550,000 commencing on April 25, 2016 and on each business day thereafter until April 24, 2017; (ii) interest rate at 0.33112328761% per day of the unpaid balance, or 120.86% annual interest; (iii) daily payments equaling $3,775.72, followed by a final payment of $3,771.34 on April 25, 2017. The Note is governed by the laws of the State of Wisconsin, the location of Bank of Lake Mills. The State of Wisconsin has no maximum usury rate for commercial loans.

19. The Note is secured by a Deed of Trust on the Property. Yosemite Management did not execute the Note. The Deed of Trust is governed by federal law and the law of the jurisdiction in which the Property is located, or Colorado.

20. On April 25, 2016, Bank of Lake Mills, and its successors and/or assigns, filed a UCC financing statement with the Colorado Secretary of State naming CMS Facilities and Yosemite Management, LLC as the debtor and asserting a security interest in all assets.

21. On June 13, 2016, Bank of Lake Mills formally assigned the Note and Deed of Trust to WBL.

22. Although Bank of Lake Mills is identified as the lender on the loan documents, the Bank is not the "true" lender. In fact, all communications relating to the loan and loan documents were through WBL.

23. In April 2016, WBL provided to Wright a form Business Loan Application for him to fill out to as part of the loan documents. The Application identifies both WBL and Bank of Lake Mills in the header and includes a certification that demonstrates that WBL and Bank of Lake Mills were working in partnership.

24. Although the loan funds were purportedly issued by Bank of Lake Mills, the loan was immediately assigned to WBL, which the funds and services the loans. WBL also assumed full responsibility for all risk of loss. Bank of Lake Mills' involvement in the CMS Facilities loan was in name only. Bank of Lake Mills was nothing more than a front for WBL's loan sharking business.

25. In the event of default, WBL is then permitted to immediately seize the business assets secured under the Deed of Trust.

26.   CMS Facilities made substantial payments under the loan, paying approximately $641,000 through approximately January 2017, at which time CMS Facilities defaulted.

27.   As a result of the default, on or around March 28, 2017, WBL filed a Complaint against Borrower and the Guarantors, seeking foreclosure upon the Property (the "Litigation"). The action was filed in Arapahoe County District Court, Case No. 2017CV30714.

28.   At the time the Litigation was commenced, according to the WBL Complaint filed, the amount due under the WBL Note was "the sum of $283,811.01 on the principal; interest through February 1, 2017 in the amount of $29,401.93; NSF fees of $1,575.00; prepayment penalty of $4,264.03; plus accrued interest therein from February 1, 2017."

29.   On or around December 4, 2017, Rent-Rite purchased the Property from Yosemite Management. Rent-Rite took title to the Property subject to the Deed of Trust.

30.   After taking ownership of the Property, on December 11, 2017, Rent-Rite filed its Chapter 11 bankruptcy petition ("Petition Date"). On the Petition Date, the Property was worth approximately $3.3 million dollars. The total amount of secured claims totaled approximately $3,046,493, and unsecured claims totaled approximately $1,128,541.

31.   Rent-Rite's Schedules of Assets and Liabilities listed $5,156,660.77 in assets and $4,175,034.98 in liabilities.

32.   On February 26, 2018, WBL filed a Proof of Claim that stated the amount due and owing was $658,652.95. The Proof of Claim further identified the annual interest rate of 120.86%.

33.   Based upon the 120.86% rate, the amount due and owing at present is over $1 million, which amount continues to accrue.

34. In the course of Rent-Rite's bankruptcy, the Property was sold for purposes of paying lien holders according to their priority. As the amount of WBL's claim is in dispute, a significant part of the proceeds from the sale of the Property have been placed in escrow.

## FIRST CLAIM FOR RELIEF
### (Avoidance of Fraudulent Transfers Pursuant to C.R.S. §38-8-105 and 106, on behalf of Wright and Yosemite Management)

35. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

36. Yosemite Management, with Wright as its sole member and manager, was owner of the Property. Yosemite Management's interest in the Property was transferred to or for the benefit of WBL in the form of a lien and security interest on substantially all of Yosemite's assets (the "Transfer").

37. The Transfer constitutes a transfer of an interest in the Property.

38. The Transfer was made to or for WBL's benefit.

39. Plaintiffs' assets did not increase at all as a result of the Transfer, but its liabilities increased substantially, represented by substantial additional debt secured by the Property.

40. As such, Plaintiffs received less than reasonably equivalent value in exchange for the Transfer because Plaintiffs received little or no benefit in exchange for incurring the debt associated with the CMS Loan.

41. The Transfer and incurring of the debt under the CMS Loan constitute fraudulent transfers pursuant to C.R.S. §§ 38-8-105 and 106.

42. Accordingly, Plaintiffs are entitled to avoid the Transfer and incurring of the debt under the CMS Loan.

## SECOND CLAIM FOR RELIEF
## (Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. § 544 C.R.S. § 38-8-105 and 106, on behalf of Rent-Rite)

43. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

44. On the Petition Date, Rent-Rite, as a debtor-in-possession is vested with avoidance powers under 11 U.S.C. § 544(a)(1), which grants the debtor-in-possession status as a hypothetical judicial lien creditor.

45. During the year prior to the Petition Date and subsequent thereto, the debt in connection with the CMS Loan encumbered the Property and Yosemite and Rent-Rite's interest in the Property was transferred to or for the benefit of WBL in the form of a lien and security interest on substantially all of Yosemite's and Rent-Rite's assets (the "Transfer").

46. The Transfer of the Property constitutes transfer of interest in Plaintiffs' property.

47. The Transfer was made to or for WBL's benefit.

48. Plaintiffs' assets did not increase at all as a result of the Transfer, but its liabilities increased substantially, representing additional debt.

49. The Transfer provided no value to Rent-Rite or to its predecessor-in-interest as to the Property, Yosemite Management.

50. As such, Plaintiffs received less than reasonably equivalent value in exchange for the Transfer because Plaintiffs received little or no benefit in exchange for incurring the debt associated with the CMS Loan.

51. As of the Petition Date, Plaintiff Rent-Rite's Schedules of Assets and Liabilities listed $5,156,660.77 in assets and $4,175,034.98 in liabilities.

52. As of the Petition Date, unsecured creditors existed that are entitled to avoid WBL's Transfer under applicable non-bankruptcy law pursuant to 11 U.S.C. § 544(b) of the Bankruptcy Code.

53. The Transfer and incurring of the debt under the CMS Loan constitute fraudulent transfers pursuant to C.R.S. §§ 38-8-105 and 106, as incorporated by § 544(b)(1) of the Bankruptcy Code.

54. Accordingly, Plaintiffs are entitled to avoid the Transfer and incurring of the debt under the CMS Loan.

### SECOND CLAIM FOR RELIEF
### (Avoidance under 11 U.S.C. § 548 on behalf of Rent-Rite)

55. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

56. The execution and delivery of the Deed of Trust is a fraudulent transfer under 11 U.S.C. § 548 that can be avoided by Plaintiffs.

57. Plaintiffs received no value in exchange for the Transfer, let alone reasonably equivalent value.

58. At the time of the Transfer, Yosemite Management (i) was insolvent or became insolvent as a result of the Transfer; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with it was an unreasonably

small capital; and (ii) intended to incur, or believed that it would incur, debts that would be beyond Plaintiffs' ability to pay as such debts as they matured.

59. The Transfer was made to or for the benefit of WBL.

60. Accordingly, the Transfer constitutes an avoidable fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

61. Plaintiff Rent-Rite is entitled to a judgment avoiding the Transfer, directing that the Transfer be set aside and recovering the Transfer, or the value thereof, for the benefit of the bankruptcy estate.

### FOURTH CLAIM FOR RELIEF
### (Recovery of Avoidable Transfers Pursuant to 11 U.S.C. §§ 550 and 551 on behalf of Rent-Rite)

62. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

63. WBL was the entity for whose benefit the Transfer was made.

64. Upon the avoidance of the Transfer under section 544 of the Bankruptcy Code, Plaintiff Rent-Rite may recover the Transfer or the value thereof from WBL or any mediate or immediate transferee pursuant to § 550 of the Bankruptcy Code.

65. Upon the avoidance of the Transfer under § 544 of the Bankruptcy Code, such transfer is preserved for the benefit of the estate pursuant to § 551 of the Bankruptcy Code.

66. By reason of the foregoing, Plaintiff Rent-Rite may recover the Transfer or the value thereof pursuant to § 550 of the Bankruptcy Code and the Transfer is preserved for the benefit of the estate pursuant to § 551 of the Bankruptcy Code.

WHEREFORE, Plaintiff prays the Court enter a judgment:

A. In favor of Plaintiffs and against WBL to avoid the Transfer and debt incurred by Plaintiffs under the CMS Loan and Deed of Trust pursuant to C.R.S. § 38-8-105, as incorporated by § 544(b)(1) of the Bankruptcy Code;

B. In favor of Plaintiffs and against WBL recovering the Transfer or the value thereof from WBL pursuant to § 550 of the Bankruptcy Code and the Transfer is preserved for the benefit of the estate pursuant to § 551 of the Bankruptcy Code;

C. Awarding Plaintiffs pre-judgment and post-judgment interest as to each Claim asserted herein, as applicable;

D. Attorneys' fees and costs; and

E. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in this case of all issues triable of right by a jury.

Respectfully submitted,

*s/ Patrick D. Vellone*
Patrick D. Vellone
Jennifer E. Schlatter
ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.
1600 Stout Street, Suite 1100
Denver, CO 80202
Telephone: (303) 534-4499
E-mail: pvellone@allen-vellone.com
E-mail: jschlatter@allen-vellone.com

ATTORNEYS FOR PLAINTIFFS RENT-RITE SUPERKEGS WEST LTD

Respectfully submitted,

*s/ Jeffrey Brinen*
Jeffrey Brinen
KUTNER BRINEN, P.C.
1660 Lincoln St. Suite 1850
Denver, CO 80264
(303) 832-2400
jsb@kutnerlaw.com
ATTORNEYS FOR YOSEMITE MANAGEMENT, LLC

Respectfully submitted,

*s/ Thomas S. Wright*
Thomas S. Wright, *pro se*
1400 Yosemite Street
Aurora, CO 80220
twright@twges.com

## VERIFICATION OF COMPLAINT PURSUANT TO 28 U.S.C. § 1746

I, Thomas S. Wright, individually and as owner of Rent-Rite SuperKegs West Ltd. and Yosemite Management, LLC, verify under penalty of perjury that, to the best of my knowledge and recollection, the matters stated in the Verified Complaint are true and correct.

Executed on December 11, 2019.

*[signature]*

Thomas S. Wright